UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JASMINE HOBBS, et al.,

    Plaintiffs,

    v.                                                    Case No. 2:24-CV-451-GSL-JEM

LAKE COUNTY, et al.,

    Defendants.

## **ORDER**

This matter is before the Court on the partial Motion to Dismiss Plaintiffs' Amended Complaint by Defendants Town of Winfield, and Town of Winfield Officers Daniel Ball, Chad Stroup, Paul Shane, Skyler Hofer, and Jordan Billups Taylor. The Amended Complaint is found at [DE 48]. Defendants' Brief in Support of the Motion to Dismiss was filed at [DE 60], with Plaintiffs responding at [DE 62] and Defendants replying to Plaintiffs at [DE 65]. The Court held a hearing on October 28, 2025. Having reviewed the argument there, and the parties' briefing, the Court is ready to rule.

*Background*

The facts, as alleged by Plaintiffs in their Amended Complaint, are as follows.[1] On July 14, 2024, Winfield Police Department received a report of shots fired and began looking for a suspect described as a black male, about 5'7'', with a stocky build. [DE 48, Page 4]. Plaintiff Airius Reed did not match the description, however, when he exited his home to get his charger from his car, Defendant Officer Stroup approached him, shined a flashlight and yelled "Come

---

[1] At this stage in the proceedings, the Court is to accept all facts in the complaint as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences in their favor. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

here!" but did not identify himself. [*Id.* at 5]. Plaintiff Airius Reed, believing he was being

robbed, retreated into the home. Plaintiff Jasmine Hobbs, his girlfriend, called 911 to report an

attempted robbery and remained on the line with 911. [*Id.*].  She informed dispatch that there

were children in the home and that her father, Plaintiff Larry Hobbs, was disabled. Plaintiffs

allege that Winfield PD requested assistance from the Lake County Sheriff's Department,

incorrectly reporting they had contacted the shooter at Plaintiffs' home. [*Id.*].

Defendant Lake County Officers Cordova, Siems, and Zabrecky responded and took

positions around the home. [*Id.*]. Defendant Officer Hofer initially instructed Plaintiff Jasmine

Hobbs to remain inside with her children, but then demanded she exit while officers pointed guns

at her. [*Id.* at 5-6]. Defendant Lt. Zabrecky, using his patrol vehicle's PA system, ordered the

adults to exit. [*Id.* at 6]. He simultaneously directed Plaintiff Airius Reed to walk away from the

residence while also commanding he get on the ground. The adults exited the residence with

their hands raised, fully complying with the officers' orders. [*Id.*].

After Plaintiff Airius Reed was lying on the ground, Defendant Officer Stroup grabbed

his right arm, twisted it behind his back, and handcuffed him while other officers had their

weapons on him. [*Id.*]. Defendant Officer Stroup taunted Plaintiff Airius Reed by calling him

"homie" and questioning him. [*Id.*]. Despite being informed of his disability, Defendant Officer

Shane grabbed Plaintiff Larry Hobbs by the arm, pulled him from the doorway, threw him

facedown onto the ground, and handcuffed him. [*Id.*]. When he later ordered Plaintiff Larry

Hobbs to stand, Mr. Hobbs stated that he was physically unable to do so without assistance due

to his disability. [*Id.*]. As Plaintiff Jasmine Hobbs exited last, she informed Defendant Officers

Hofer and Shane about the children inside. Defendant Officer Hofer forcefully handcuffed her

and moved her to a patrol vehicle despite no evidence linking her to criminal activity. [*Id.*]. After

securing the adult occupants and acknowledging that Plaintiff Airius Reed was "too tall" to be the suspect, the officers entered the residence. Minor Plaintiffs Z.K. and Z.R. hid beside their bed, dimmed nearby electronic devices, and tried to remain quiet to avoid detection. [*Id.*].

Defendant Lt. Zabrecky eventually released Plaintiff Jasmine Hobbs from handcuffs and escorted her inside where she provided video footage showing Plaintiff Airius Reed had been at home from 8:39pm to 10:30pm, proving that he could not have been involved in the shooting. [*Id.*]. Despite this, officers continued to detain Plaintiff Airius Reed for twenty minutes before releasing him from handcuffs. [*Id.*]. None of the Plaintiffs were ever charged with a crime. [*Id.*]. This lawsuit ensued.

*Legal Standard*

In response to a complaint, a party may file a motion to dismiss the action asserting that the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face rather than merely conceivable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This is to say that the plaintiff sufficiently pleads the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Under this plausibility standard, a court accepts the well-pleaded factual allegations stated in the complaint as true and views them in the light most favorable to the non-moving party. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019). However, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this

presumption of truth. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

*Discussion*

## I.    Section 1983 Claims

Plaintiffs bring five counts of Section 1983 claims against Defendants Billups Taylor, Ball, Stroup, Shane, and Hofer, however, Defendants only move for dismissal of Defendants Billups Taylor and Ball. As such, this section will only address the Section 1983 claims as they relate to those two individuals. Typically, to pursue claims under 42 U.S.C. § 1983, a plaintiff must allege that the defendant "personally participated in the alleged misconduct" giving rise to liability. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Defendants argue that this Court should dismiss all federal claims against Defendants Billups Taylor and Ball because there are no allegations indicating their personal involvement in Plaintiffs' alleged constitutional deprivations. [DE 60 at 6].

### a.    Defendant Billups Taylor

Beginning first with Defendant Billups Taylor, Plaintiffs do not allege that he was present during the underlying events, but instead, allege that he was aware of the incidents as they unfolded and that Defendant Officers Stroup, Shane, and Hofer sought his direction and instruction on how to proceed. [DE 48 at ¶¶ 79-81]. Defendants, citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), argue that Defendant Billups Taylor's lack of presence is fatal to Plaintiffs' Section 1983 claims against him. [DE 60 at 7]. Plaintiffs, in response, quote *Yang* for the proposition that the Seventh Circuit has never required physical presence as an absolute prerequisite for Section 1983 or failure to intervene liability: "One who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other

officers who summarily punish a third person in his presence or otherwise within his knowledge." [DE 62 at 4 (quoting *Yang*, 37 F.3d at 283)]. Plaintiffs argue that the "otherwise within his knowledge" language "explicitly contemplates scenarios beyond physical presence and creates an alternative basis for failure to intervene liability…". [*Id.*].

The Court disagrees with Plaintiffs. First, there is no pronouncement in *Yang* that the "otherwise within his knowledge" language explicitly contemplates scenarios beyond physical presence. Second, in *Yang*, both officers sued under Section 1983 were present for the entire incident at issue; therefore, *Yang* is not analogous to the case at hand. However, Plaintiffs cite a more persuasive case, *Crowder v. Lash*, which Defendants do not address in their reply.

> In order for supervisors to be individually liable, Plaintiff must show 'a deliberate or reckless disregard' for his rights, or that the actions occurred 'at [the supervisor's] direction or with her knowledge or consent.' *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)

[DE 62 at 5].

While it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a "defendant's direct participation in the deprivation is not required" in all circumstances. *Crowder*, 687 F.2d at 1005. An official satisfies the personal responsibility requirement of Section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent. *Id.* (citing *Beard v. Mitchell*, 604 F.2d 485, 498-99 (7th Cir. 1979)); *see Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000).

In *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857 (7th Cir. 1999), the plaintiff alleged that a sheriff, who was the supervisor of officers, "personally directed" an unconstitutional search, but the district court dismissed the constitutional claim against him,

because the complaint did not allege how he had caused or participated in the search. *Id.* at 859. On appeal, the Seventh Circuit, citing *Gentry v. Duckworth*, found that the complaint had adequately alleged the sheriff supervisor had personally directed the search, which was enough for liability to attach to him, assuming the evidence supported such allegations. *Ryan*, 188 F.3d at 859 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Similarly, in *Brokaw*, the Seventh Circuit found that a caseworker who was not present for the seizure and removal of children from a home, but "directed those who removed the children to do so," could be liable under Section 1983 for the alleged constitutional violation. *Brokaw v. Mercer County*, 235 F.3d 1000, 1014 (7th Cir. 2000). And, reiterating that principle in *Finnegan*, the court stated "*Brokaw* teaches that a defendant is personally responsible if she 'acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.'" *Finnegan v. Myers*, 2015 U.S. Dist. LEXIS 119715, at *43-44 (S.D. Ind. Sept. 8, 2015) (citing *Brokaw*, 235 F.3d at 1012 (quotations omitted)).

These cases do not appear to be isolated incidents; in fact, it appears well established in this Circuit that a defendant may be personally responsible if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. *See Wilson v. Warren C*nty., 830 F.3d 464, 469 (7th Cir. 2016) (citing *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (A defendant is personally responsible "if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.")); *Childress v. Walker,* 787 F.3d 433, 440 (7th Cir. 2015) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (Liability may attach "if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent.")); *Doyle v. Camelot Care Ctrs., Inc.*,

305 F.3d 603, 614-615 (7th Cir. 2002) ("Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct."); *Bostic v. Vasquez,* 652 F. Supp. 3d 971, 985 (N.D. Ind. 2023) (citing *Nanda v. Moss*, 412 F.3d 836, 842 (7th Cir. 2005) ("… supervisory liability can be established if the conduct causing the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent…")); *Jackson v. Allen*, 2011 U.S. Dist. LEXIS 8557, at *8 (N.D. Ind. Jan. 28, 2011) ("An official is therefore personally involved if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge or consent."); *Perrey v. Donahue*, 703 F. Supp. 2d 839, 847 (N.D. Ind. 2010) (citing *Crowder*, 687 F.2d at 1005) ("The personal responsibility requirement [of Section 1983] is satisfied 'if the official acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.'")).

Defendants focus the bulk of their Reply distinguishing Plaintiffs' allegations from *Stewardson v. Titus*, 126 F.4th 1264, 1270 (7th Cir. 2025). The Court agrees with Defendants that *Stewardson* is distinguishable and does not see its relevance here. [DE 64 at 2-3]. Perhaps that is why Plaintiffs do not cite it. Furthermore, and only in a footnote, Defendants argue that Plaintiffs' failure to respond to their arguments regarding unlawful search and seizure, excessive force, false arrest, and false imprisonment serves as a waiver and provides alternative grounds for dismissal of those claims against Defendant Billups Taylor. [*Id.* at 4]. Courts across this Circuit have held that arguments raised only in footnotes are forfeited or waived.

> Indeed, courts have held that arguments raised only in footnotes are forfeited or waived. *Moriarty ex rel. Local Union No. 727, I.B.T.*

> *Pension Trust, and the Teamsters Local No. 727 Health and Welfare Trust v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 766 (N.D. Ill. 2010); *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752, 765 [n.6] (N.D. Ill. 2008); *E.E.O.C. v. Custom Companies, Inc.*, Nos. 02 C 3768, 03 C 2293, 2007 U.S. Dist. LEXIS 45116, 2007 WL 1810495, at *[12] (N.D. Ill. June 21, 2007).

*Haldar v. Univ. of Notre Dame Du Lac*, 2025 U.S. Dist. LEXIS 88021, at *10 (N.D. Ind. May 8, 2025). Notwithstanding, the Court disagrees that Plaintiffs failed to respond to those arguments.

Defendants addressed each of the Section 1983 claims asserted against Defendant Billups Taylor by arguing generally that Plaintiff's allegations were conclusory statements, that Plaintiffs failed to allege Defendant Billups Taylor was present on the scene, and that officers not present on the scene cannot be liable for the constitutional violations. [DE 60 at 7]. Notably, Defendants failed to discuss the false imprisonment claim individually in their discussion of Section 1983 liability attaching to Defendant Billups Taylor, so Plaintiffs could not have responded to it. Plaintiffs did respond to each of Defendants' arguments by citing caselaw supporting the proposition that personal presence is not required in all circumstances for Section 1983 liability to attach. For these reasons, Defendants' footnote argument fails.

Plaintiffs allege that Defendant Officers Stroup, Shane, and Hofer sought Billups Taylor's direction on how to proceed in their interactions with Plaintiffs [DE 48 at ¶¶ 81, 84]. This Court finds that at this stage of the proceedings Plaintiffs have adequately alleged a constitutional violation against Defendant Billups Taylor for providing direction to the Defendant Officers. At this time, Plaintiffs' Section 1983 claims in Counts I through IV may proceed against Defendant Billups Taylor.

However, Count V is a claim against Defendant Billups Taylor for failure to intervene. An officer who is present and fails to intervene to prevent other law enforcement officers from

infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This requirement that the defendant be personally involved to bring a failure to intervene claim is not satisfied by providing direction, and instead, requires actual presence at the incident. *Yang*, 37 F.3d at 285 (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)); *accord Byrd v. Clark,* 783 F.2d at 1006-07.

For the foregoing reasons, Count V is dismissed, with prejudice, against Defendant Billups Taylor. Counts I through IV may proceed against him.

### b. Defendant Ball

Moving now to the Section 1983 claims against Defendant Ball, Defendants argue that Plaintiffs fail to allege that Defendant Ball was present for or knew of, facilitated, approved, condoned, or otherwise turned a blind eye to the Defendant Officers' conduct, and therefore, Defendant Ball cannot be held liable solely due to his supervisory role over the Defendant Officers. [DE 60 at 8]. Plaintiffs concede that they have not alleged Defendant Ball was personally present on the scene or even knew about this specific incident as it was unfolding, but, citing *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) and *McDonald v. Obaisi*, 2017 U.S. Dist. LEXIS 148487, at *1 (N.D. Ill. Sep. 13, 2017), argue that personal involvement is not required in every circumstance. [DE 62 at 5]. They argue that "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." [*Id.*]. Defendants reply that *Armstrong v. Squadrito* is inapposite, because *Luck v. Rovenstine*, 168 F.3d 323, 325 (7th Cir. 1999) was decided more

recently and, according to them, is on point. Defendants then argue that there is no such thing as individual liability under *Monell*, and as such, Plaintiffs cannot base their individual capacity claim against Officer Ball under the framework of *Monell's* final policymaker prong. [DE 65 at 6-7].

Plaintiffs appear to use imprecise language in their Response to Defendants. Although Plaintiffs stated that "personal involvement is not required for individual policymaker liability under *Monell*," they allege separate counts for the individual claims against Defendant Ball and the *Monell* claims based upon his conduct as a final policymaker for the Town of Winfield. Under Count II, Excessive Force, Plaintiffs allege that:

> Defendant Daniel Ball, in his **individual capacity**, is also liable under 42 U.S.C. § 1983 for his direct role in causing and perpetuating the excessive force used on July 14, 2024. As Town Marshal and final policymaker of the newly created Winfield Police Department, Ball personally trained and supervised the officers involved in this incident and instilled a culture that prioritized force over de-escalation, normalized unconstitutional policing tactics, and discouraged intervention during excessive force incidents.

[DE 48 at ¶ 67 (emphasis added)]. The Seventh Circuit recently held that references to policymaking alone do not transform an individual capacity suit into an official capacity suit, like one involving a *Monell* claim; policymakers can still be held personally liable when they devise or implement a deliberately indifferent policy. *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (citing *Armstrong,* 152 F.3d at 581 (7th Cir. 1998)). The *Monell* count, an official capacity suit against the Town of Winfield, is separate and distinct from the individual liability claim brought against Defendant Ball. Under Count VII, *Monell* and *Canton* Liability Against Lake County and Town of Winfield, Plaintiffs use Defendant Ball's status as a final policymaker for the Town of Winfield to establish *Monell* liability for the Town of Winfield. These are discrete claims which both implicate facts involving Defendant Ball as a policymaker. The *Monell* claim

will be addressed in a later section, and here, the Court will focus solely on the individual liability claims against Defendant Ball.

Plaintiffs assert five constitutional claims against Defendant Ball. However, because Plaintiffs concede that the personal involvement they allege is Defendant Ball's creation of unconstitutional policies which were applied to Plaintiffs and caused their constitutional violations, the Court will first review the Complaint to analyze the allegations involving policymaking against Defendant Ball. [DE 62 at 6].

Turning to the Complaint, none of the first 46 paragraphs, providing background on the events that unfolded, implicate Defendant Ball. There are no allegations in Counts I, III, V, or IV alleging the involvement of a policy formulated by Defendant Ball. Because Plaintiffs conceded that they seek to satisfy the Section 1983 personal involvement requirement through Defendant Ball's policymaking, and because there are no allegations regarding his policies in Counts I, III, V or IV, those are dismissed against Defendant Ball.

Count II, however, alleges that Defendant Ball is liable for excessive force under Section 1983 because he created the policies which caused the constitutional violations suffered by Plaintiffs. [DE 48 at ¶¶ 67-70]. Defendants stretch the facts of this case to mimic those in *Luck*, but that case is simply not analogous. *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999). There, the constitutional claim was proceeding against the municipality, not the individual policymaker himself, like here. The *Luck* court's framing of the issue is below.

> We first address Luck's claim that Sheriff Rovenstine may be liable in his official capacity for the violation of Luck's constitutional rights. This is, in essence, a claim against the office of sheriff rather than a claim against Sheriff Rovenstine himself, and we therefore understand the claim to be directed against the county.

*Luck*, 168 F.3d at 325. The court then discussed how *Monell* liability functions and attaches to a municipality. *Id. at* 326. Moreover, there was no discussion or analysis of an individual officer

drafting, creating, or otherwise formulating an unconstitutional policy that caused constitutional violations.

For all of these reasons, the Court is unpersuaded by *Luck*. Consistent with *Orr* and *Armstrong*, Plaintiffs have stated a claim for Section 1983 liability against Defendant Ball based on the allegations that he personally formulated an unconditional policy which led to the excessive use of force against Plaintiffs in violation of the constitution. *See Armstrong*, 152 F. at 581 ("…we do note that if [the officers] personally formulated the [questionable policies], then they might face personal liability."). Counts I, III, IV, and V are dismissed, with prejudice, against Defendant Ball. Count II proceeds against him.

## II.    Count VI: Violations of the ADA against the Town of Winfield

In Count VI, Plaintiffs allege that Plaintiff Larry Hobbs was discriminated against by Defendants when they failed to provide him with reasonable accommodations during their interaction. [DE 48 at ¶¶ 18-19]. Defendants first argue that Plaintiff Larry Hobbs makes only conclusory legal statements that he is a qualified individual with a disability and that the actions taken against him were a result of his disability. [DE 60 at 9]. Notwithstanding this, Defendants frame the relevant question here as whether Title II of the ADA permits vicarious liability. [*Id.* at 9-10]. Conceding that neither the Supreme Court nor Seventh Circuit have definitively addressed the issue of whether Title II of the ADA permits vicarious liability, Defendants point this Court to a case where the Northern District of Indiana has. [*Id.* at 10]. In *Royer v. City of Elkhart*, the court undertook a thorough analysis of the remedial scheme under Title II of the ADA, and following the Sixth and Eleventh Circuits, the court found the holding in *Gebser v. Lago Vista Ind. Sch. Dist.* regarding vicarious liability under Title IX applicable to claims brought under Title II of the ADA and § 504 of the Rehabilitation Act. *Royer v. City of Elkhart*, 2022 U.S. Dist.

LEXIS 224292, at *40-41 (N.D. Ind. Dec. 13, 2022); *see Gebser v. Lago Vista Ind. Sch. Dist.,* 524 U.S. 274 (1998). Applying those principles here, Defendants argue the Town cannot be liable for the actions of its officers under Title II of the ADA.

Plaintiffs, in response, direct this Court to two recent cases in the Seventh Circuit: *King v. Hendricks County Commissioners,* 954 F.3d 981, 988 (7th Cir. 2020), and *Culp v. Caudill*, 140 F.4th 938, 942 (7th Cir. 2025). [DE 62 at 20]. Notably, in both *King* and *Culp*, the Seventh Circuit assumed for the purposes of the decision that Title II did in fact apply to the officer's interactions. [DE 62 at 20].

In *King*, the Seventh Circuit assumed for the purposes of the opinion that Title II applied to the officers' interactions, that the governmental unit could be held vicariously liable for the actions of individual officers, and that deliberate indifference was the appropriate standard by which to analyze the institutional defendants' conduct. *King,* 954 F.3d at 988. To prevail on such a claim, the plaintiff must show that but for the disability, he would have been able to access the services or benefits desired. *Id.* at 989. Because in *King* the evidence fell short of that standard, the question of whether Title II of the ADA permitted vicarious liability for the actions of its employees was not decided. The same rang true in recent case, *Culp*, where the Seventh Circuit again declined to decide the applicability of the ADA and the Rehabilitation Act to the actions of law enforcement, because even assuming the applicability, the evidence demonstrated no violation. *Culp*, 140 F.4th at 944.

As a final point, there are two recent cases from the Northern District of Indiana which underscore the unsettled nature of the law. Contrary to *Royer*, at the screening stage in *Johnson v. Noland*, 2025 U.S. Dist. LEXIS 33490, at *4 n.2 (N.D. Ind. Feb. 24, 2025), the court permitted plaintiff to proceed on his Title II claim against the Indiana Department of Corrections, stating:

> It is unclear whether Johnson will need to demonstrate direct liability or whether respondeat superior applies. This issue has not yet been decided by the Seventh Circuit. *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1005 (N.D. Ill. 2019) (holding that, to prevail, the plaintiff would need to show that an official with authority to take corrective action had actual knowledge of the alleged wrongdoing); *Royer v. City of Elkhart*, No. 3:22-CV-254 JD, 2022 U.S. Dist. LEXIS 224292, 2022 WL 17600377, at *16 (N.D. Ind. Dec. 13, 2022) (requiring a showing of direct liability).

*Johnson*, 2025 U.S. Dist. LEXIS 33490, at *4, n.2 (N.D. Ind. Feb. 24, 2025). In a similar case, *Thompson v. Reagle*, the court made an almost identical ruling and comment: that the plaintiff could proceed under Title II, but that it was unclear whether that would be on a theory of vicarious or direct liability. *Thompson v. Reagle*, 2025 U.S. Dist. LEXIS 94925, at *8-9 (N.D. Ind. May 19, 2025).

Due to the uncertainty in this Circuit and across the nation, this Court declines to definitively answer the question of whether Title II of the ADA permits vicarious liability for the actions of its employees. Instead, the Court will, as so many courts both in this district and across the nation have, assume, for the purposes of this opinion, that Title II does apply.

However, and important to the case at bar, to recover damages in a Title II action, like Plaintiffs request here, a plaintiff must identify intentional conduct, not just acts of negligence, by a named defendant. *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023) (citing *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022)). "[A] plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference." *Lacy v. Cook County*, 897 F.3d 847, 863 (7th Cir. 2018). The Seventh Circuit has adopted a two-part standard for deliberate indifference in this context; it requires both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Lacy*, 897 F.3d at 863. First, under the standard articulated in *Gebser*, the Court is to examine whether

the Complaint sufficiently alleged that there was "an official who at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf" and also had "actual knowledge of discrimination in the recipient's programs [but] fail[ed] adequately to respond." *Royer*, 2022 U.S. Dist. LEXIS 224292, at *49 (citing *Gebser*, 524 U.S. at 290); *see Ravenna*, 388 F. Supp. 3d at 1008 (applying the standard set forth in *Gebser* to determine if direct liability existed).

Here, Plaintiffs allege that Plaintiff Larry Hobbs's disability was communicated to dispatch during Plaintiff Jasmine Hobbs's initial call to 911. [DE 48 at ¶ 27]. The Court is unpersuaded that a dispatcher has the ability to modify law enforcement procedure to accommodate disabilities. Plaintiffs also allege that Defendant Shane was aware of Plaintiff Larry Hobbs's disability when using excessive force against him. [DE 48 at ¶ 34]. But Defendant Shane cannot serve as an appropriate official because actual notice must be communicated to someone other than the wrongdoer. *Royer*, 2022 U.S. Dist. LEXIS 224292, at *49-50 (citing *Gebser*, 524 U.S. at 291) ("Where a [public entity's] liability rests on actual notice principles . . . the knowledge of the wrongdoer himself is not pertinent to the analysis."). For these reasons, Plaintiffs' Title II claims fail because Plaintiffs cannot satisfy the first element required to state a claim requesting damages, and therefore, the Court dismisses Count VI with prejudice.

### III.  Count VII and Count XII: Monell claims against the Town of Winfield

Plaintiffs bring *Monell* claims under a variety of theories. To state a claim under *Monell*, a plaintiff must show that the "unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir.

15

2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). For a *Monell* claim to

survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) they were

deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e.

a policy or custom), such that the challenged conduct is properly attributable to the municipality

itself; (3) the policy or custom demonstrates municipal fault, i.e. deliberate indifference; and (4)

the municipal action was the moving force behind the federal-rights violation. *Thomas v. Neenah

Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Monell,* 436 U.S. at 691-94).

The Court begins with Plaintiffs' allegations involving the Town of Winfield's

widespread customs, policies, or practices. To succeed under this theory, Plaintiffs must allege

facts permitting a reasonable inference "that the practice is widespread and that the specific

violations complained of were not isolated incidents." *Thomas*, 74 F.4th at 524 (citing *Gill v.

City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). Allegations of "a few sporadic examples

of an improper behavior" will not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th

Cir. 2021) (concluding that a complaint offering three examples of one officer speeding did not

plausibly suggest that a city had a widespread practice of allowing officers to speed).

First, Plaintiffs argue that Defendant Town of Winfield had a widespread custom, policy,

or practice of "joint operations" with Lake County, where Defendant Town of Winfield would

contact the Lake County Sheriff's Department for assistance, fully aware that Lake County

officers had previously been found by a federal court to violate constitutional rights. [DE 62 at

10-11]. Plaintiffs, however, fail to allege facts that would permit this Court may reasonably infer

"that the practice is widespread and that the specific violations complained of were not isolated

incidents." *Thomas*, 74 F.4th at 524 (citing *Gill*, 850 F.3d at 344). There are no allegations of

specific incidents where other people had their rights violated as a result of Defendant Town of

Winfield's request for assistance from or, joint operations with, Defendant Lake County Sheriff's Department. For this reason, this *Monell* claim fails.

Second, Plaintiffs argue that the Town of Winfield has a widespread custom and practice of excessive force and intentional agonizing. [DE 62 at 11-12]. But here again, Plaintiffs fail to allege facts that would permit this Court to reasonably infer "that the practice is widespread and that the specific violations complained of were not isolated incidents." *Thomas*, 74 F.4th at 524 (citing *Gill*, 850 F.3d at 344). Plaintiffs discuss their own experiences with excessive force and intentional antagonization by Town of Winfield officers, but provide no other specific incidents. For this reason, this *Monell* claim too fails.

Third, Plaintiffs argue that Defendant Town of Winfield is liable under *Monell* for Defendant Ball's failure to appropriately train officers to deescalate encounters and avoid use of force. [DE 62 at ¶¶ 6-8, 12-13]. Plaintiffs also appear to argue the alternative, that Defendant Town of Winfield is liable under *Monell* for Defendant Ball's custom, policy, and practice of training officers to escalate encounters and use force. [*Id.*]. But here too, Plaintiffs fail to allege facts that would permit this Court to reasonably infer that either practice is "widespread and that the specific violations complained of were not isolated incidents." *Thomas*, 74 F.4th at 524 (citing *Gill*, 850 F.3d at 344). Plaintiffs identify no specific incidents where other people had excessive force used against them by Winfield officers trained by Defendant Ball. For this reason, these *Monell* claims fail.

Fourth, Plaintiffs argue that Defendant Ball's background of excessive force establishes sufficient grounds for *Monell* liability, because the Town of Winfield had knowledge of the substantial risk when hiring him. [DE 62 at 12-13]. Plaintiffs allege that Defendant Town of Winfield was aware of Defendant Ball's disciplinary record, including four documented

disciplinary actions after internal investigations with at least one involving excessive use of force. [DE 48 at ¶¶ 131, 136, 137, 138, 140]. According to Plaintiffs, Defendant Town of Winfield hired Defendant Ball despite knowing that the internal investigations by the Munster Police Department concluded he had used excessive force and intentionally agonized a person, and that he was removed from his role at the Munster Police Department as a result of those findings. [DE 48 at ¶¶ 133, 163, 149]. Despite "sustained complaints" against Defendant Ball, that Defendant Town of Winfield hired him to develop, train, lead their new police force. [DE 48 at ¶¶ 138, 139, 145, 151].

The Supreme Court has held that municipal liability for a hiring decision requires a showing of conscious disregard of an obvious risk that the particular injury inflicted upon the plaintiff would follow, and "a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff[s]." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 412 (1997). Plaintiffs allege that they suffered excessive force at the hands of the Defendant Officers who were executing Defendant Ball's excessive force policies and using the training he provided them, and that Defendant Town of Winfield should have known this, given Defendant Ball's personnel record and history. At this juncture, Plaintiffs have adequately alleged their *Monell* claim premised on the hiring of Defendant Ball.

Finally, Plaintiffs allege that Defendant Town of Winfield is liable under *Monell* for Defendant Ball's unconstitutional acts. As an initial matter, this requires Defendant Ball being a final policymaker. Plaintiffs allege that he satisfies the final policymaker in two ways: First, because his decisions were not subject to meaningful review, Defendant Ball functioned as a final policymaker under *Monell*. [DE 48 ¶ 134]. Second, and more persuasively, Plaintiffs argue that Defendant Ball was a final policymaker as a matter of law. [DE 62 at 8-9].

18

Plaintiffs argue that under the Winfield Code of Ordinances § 31.35(B), "[t]he Town Marshal shall serve as the Chief Police Officer of the town and provides for the orderly functioning of the Town Police Department in the enforcement of statutory law and execution of process by a legislative body and Courts having proper jurisdiction." [DE 62 at 8-9 (citing Indiana Code § 36-8-3-3(g) and § 36-8-3.5-11)].  Plaintiffs further argue that the Seventh Circuit has consistently interpreted this statutory framework, holding that "under Indiana law, the county sheriff and chief of police in their respective positions are the final policymakers for law enforcement officials in their respective departments." [DE 62 at 8-9 (citing *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995)).]. The Court finds here that Plaintiffs have sufficiently alleged that Defendant Ball was a final policymaker.

Moving to the allegations about Defendant Ball's conduct, Plaintiffs allege that Defendant Ball deliberately created and maintained an environment where constitutional violations were accepted and normalized. [DE 48 at ¶¶ 88, 128, 132, 142, 144, 146]. Defendant Ball's failure to implement proper training, oversight, and corrective mechanisms were, allegedly, a moving force behind the violations allegedly committed by the Defendant Officers on July 14, 2024. [*Id.*]. Plaintiffs further allege that Defendant Ball intentionally instilled a culture of excessive force, trained the Defendant Officers to use his excessive force methods, and accepted, normalized, or otherwise condoned constitutional violations within the Defendant Town of Winfield's Police Department. [DE 48 at ¶¶ 67, 147].

Typically, a *Monell* plaintiff must allege a series of constitutional injuries traceable to the challenged municipal policy or custom; however, that's not the case where an express policy, or an act of an authorized policymaker, is *itself* unconstitutional. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 386 (7th Cir. 2017) (…except in the unusual case in which an express policy []or

an act of an authorized policymaker[] is *itself* unconstitutional, a *Monell* plaintiff must produce evidence of a series of constitutional injuries traceable to the challenged municipal policy or custom…"). That is precisely what Plaintiffs allege here, that the acts of Defendant Ball, an authorized policymaker, were unconstitutional, and therefore, the Town of Winfield is liable. Plaintiffs have adequately alleged a *Monell* claim under this theory.

Plaintiffs further argue that Defendant Town of Winfield is liable under the *Calhoun* standard, because Winfield failed to establish a credible process for receiving, documenting and investigating complaints of excessive force. [DE 62 at 12]. Plaintiffs allege that Defendant Town of Winfield responded to their FOIA request that it had no record of any excessive force complaints or disciplinary actions from August 2023 through April 2025. [DE 42 at 165]. Plaintiffs go on to allege that the absence of such record "despite documented public incidents" demonstrates a deliberate failure to track, review and investigate officer misconduct. However, nowhere do Plaintiffs identify those "documented public incidents," so this argument fails.

Plaintiffs appear to also bring indemnification claims against Defendant Town of Winfield. An indemnification claim is not ripe unless and until liability is established. *Wynn v. City of Indianapolis*, 496 F. Supp. 3d 1224, 1240 (S.D. Ind. 2020) (citing *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010)). The Seventh Circuit has held that when a duty-to-indemnify claim is not ripe, the proper disposition is to dismiss it. *Medical Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *see Lear Corp. v. Johnson Elec. Holdings Ltd*., 353 F.3d 580, 583 (7th Cir. 2003); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995). Here, liability has not been established as to any of the Defendants.

For this reason, the Court also dismisses Count XII, the indemnification claim, without prejudice. The *Monell* claims against Defendant Town of Winfield premised on (1) their hiring

Defendant Ball, and (2) Defendant Ball's unconstitutional acts as an authorized policymaker, at this time, may proceed. All other *Monell* claims are dismissed with prejudice.

### IV.     Counts VIII, IV, X, and XI: State Law Claims against the Town of Winfield, and Officers Stroup, Shane, Hofer and Billups Taylor

Defendants argue that Plaintiffs' state law claims must be dismissed because they failed to serve the Town of Winfield with their notice of tort claim. [DE 60 at 17-18]. Plaintiffs reply that this case is similar to *Fairchild*, where plaintiffs failed to allege they had filed the requisite tort notice or were otherwise in substantial compliance with the purpose of notice requirements, but the court found that a motion to dismiss on that ground was premature. [DE 62 at 12-15 (citing *Fairchild v. Ashley-Hudson Police Dep't*, 2025 U.S. Dist. LEXIS 75301, at *8-9 (N.D. Ind. Apr. 21, 2025)]. The Court disagrees that the case is analogous, however, because the plaintiff in *Fairchild* alleged that she had no knowledge of defendants' involvement and had no basis to obtain that knowledge within the 180 days, which is why the tort notice was not served. Plaintiffs make no such allegations here.

Compliance with the ITCA's notice provisions is not a statute of limitations, but rather a "conditional precedent to filing suit" and a "procedural precedent which the plaintiff must prove and which the trial court must determine before trial." *Fairchild*, 2025 U.S. Dist. LEXIS 75301, at *8-9 (citing *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999)); *see Weaver v. Elkhart Cmty. Sch. Corp.*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018). For these reasons, the state law claims against Defendants Town of Winfield, and Officers Stroup, Shane, Hofer, and Billups Taylor are dismissed with prejudice.

*Conclusion*

Plaintiffs filed their Complaint at [DE 2] on December 26, 2024. In response, Defendants Town of Winfield and Town of Winfield Officers filed their Motion to Dismiss at [DE 37] on

March 13, 2025. More than two months later, on May 31, 2025, Plaintiffs requested leave to file their Amended Complaint, at [DE 45], and, at [DE 47], the Court both granted that request and denied as moot Defendants' first Motion to Dismiss. There is a presumption that Plaintiffs be given at least one opportunity to amend their Complaint, which here, already occurred at the behest of Plaintiff. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

Therefore, for the foregoing reasons, Defendants' Motion to Dismiss, [DE 59], is GRANTED, in-part, DENIED, in-part. Counts I, II, III, and IV, may proceed against Defendant Billups Taylor, but Count V is dismissed, with prejudice, against him. Count II may proceed against Defendant Ball, but Counts I, III, IV, and V are dismissed, with prejudice, against him. The *Monell* claims in Count VII against Defendant Town of Winfield premised on (1) their hiring Defendant Ball, and (2) Defendant Ball's unconstitutional acts as an authorized policymaker, at this time, may proceed; all other *Monell* claims are dismissed with prejudice. Counts VI, VIII, IV, and X, XI are dismissed, with prejudice and in their entirety. Count XII, however, is dismissed without prejudice.

SO ORDERED.

ENTERED: February 17, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court